## TALIAFERRO et al. v. WASHINGTON TIN PLATE CO.

(District Court, W. D. Pennsylvania. May 23, 1914.)

### No. 215.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TIN PLATE CLEANING MACHINE.

The Taliaferro and Reynard patent, No. 709,184, for a tin-plate-cleaning machine, was not anticipated and discloses invention; the prior art not disclosing the elements of the claims combined in an organized machine operating upon the principle of the patented machine. Also *held* infringed.

In Equity. Suit by John C. Taliaferro and Edwin Norton against the Washington Tin Plate Company. On final hearing. Decree for complainants.

Wesley G. Carr, of Pittsburgh, Pa., and Sturtevant & Mason, of Washington, D. C., for plaintiffs.

John S. Weller, of Pittsburgh, Pa., and V. H. Lockwood, of Indianapolis, Ind., for defendant.

ORR, District Judge. John C. Taliaferro and Edwin Norton complain that the Washington Tin Plate Company is using certain tin-plate-cleaning machines in violation of the plaintiffs' rights, as owners of United States patent No. 709,184, for a tin-plate-cleaning machine, to Taliaferro and Reynard, and seek the customary relief. The defenses are: (a) Invalidity of the patent for lack of novelty and invention; and (b) noninfringement. Defendant's contention is thus succinctly stated in the following paragraph taken from the brief filed in its behalf:

"If the patent is construed so as to cover defendant's machines, it is squarely met in the prior art and invalid. If construed to avoid the prior art, it clearly does not cover defendant's machine. From this logic there is no escape, although the patent is really neither valid nor infringed."

There are some facts which may be considered to throw light upon the controversy in this case before entering upon a detailed examination of the prior art and the relation of such prior art to the patent in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

suit. The machines complained of were made by the Anderson Foundry & Machine Company and are known as "Anderson Machines." It may fairly be found as a fact that almost all the tin-plate manufacturers in the United States use either Anderson machines or machines made by plaintiffs. It is a matter of common knowledge that the tin-plate industry in this country has grown to immense proportions. If, therefore, the Anderson machines and plaintiffs' machines have supplanted other machines, which have been described in prior patents, it is a reasonable conclusion that they accomplish better results than the older machines. Because they accomplish better results, therefore, if they are found to be made according to the disclosures of the same patent, such results fairly indicate that there is some degree of novelty in the disclosures. If there be better results obtained by the use of machines in which there are found novel features, and if such machines have practically supplanted all others, it is fair to presume some degree of invention was necessary to conceive them, or at least to arrange or rearrange in combination such parts of the machines as may be found here and there in the specifications or claims of prior patents. These observations have been educed because of the insistence by the defendant that the patent in suit is met in the prior art. The prior manufacturer had the prior art but did not have the present machines. His foresight did not include them. The present manufacturer, looking backwards, sees in the foreground the present machines and may reasonably be surprised that his predecessor was content with prior machines, parts of which could so easily be combined to form machines like those now in use.

The specification of the patent is much too long to be quoted at length in this opinion. Briefly stated, the object is to provide a machine, by means of which the grease covering the surface of freshly-tinned sheets may be removed without injuring them by passing the same through a body of bran or other cleansing material by the co-operative action of cleaning-rolls covered with sheepskin or other soft, fibrous covering revolving in the body of bran; said rolls to have no direct contact with the sheets but to grip them with or through the layers of bran on the sheets and on the rolls. To increase the rubbing action, the rolls are revolved at different speeds; that is to say, a high-speed upper roll and a low-speed lower roll being alternately arranged. The bran is heated by the sheets, thereby cleaning them better, and is stirred by the rollers, which it tends to make more free from oil or grease. It is fed into the bran box at the top. Such of it as is carried out during the operation falls to the bottom and is then elevated to the top to be refed to the box. The patentees say:

"Our invention also consists in the novel construction of parts and devices and in the novel combinations of parts and devices herein shown and described, and specified in the claims."

The claims in issue are:

"(1) In a tin-plate-cleaning machine, the combination with a box or receptacle, containing a mass or body of bran or cleaning material, and having slots or openings at its ends for the sheets to pass through, of cleaning-rolls revolving together in pairs in the body of the cleaning material with a space be-

tween the rolls of each pair, and carrying on their surfaces layers of bran or cleaning material in contact with the sheets passing between them and operating to feed and force the sheets forward by the agency of the cleaning material itself, substantially as specified.

"(2) The combination with a box or receptacle containing a mass or body of cleaning material, of a pair of separated rolls revolving in said body or mass, and operating to force the sheets through said body or mass by the agency of the cleaning material itself, substantially as specified.

"(3) The combination with a box or receptacle containing a mass or body of cleaning material of a pair of separated rolls, said rolls having different surface speeds, revolving in said body or mass and operating to force the sheets through said body or mass by the agency of the cleaning material itself, substantially as specified,

"(4) The combination with a receptacle containing a mass or body of cleaning material, of a series of pairs of separated rolls having fibrous coverings revolving in said body or mass and feeding or forcing the sheets through said body or mass through the agency of the cleaning material itself between the rolls and the sheets passing between them, substantially as specified.

"(5) The combination with a receptacle containing a mass or body of cleaning material of a series of pairs of separated rolls, having fibrous coverings revolving in said body or mass and feeding or forcing the sheets through said body or mass through the agency of the cleaning material itself between the rolls and the sheets passing between them, a feed or supply pipe for delivering the cleaning material to said box or receptacle and a discharge pipe or hopper for the cleaning material, substantially as specified.

"(6) The combination with a receptacle containing a mass or body of cleaning material of a series of pairs of separated rolls revolving in said body or mass and feeding or forcing the sheets through said body or mass through the agency of the cleaning material itself between the rolls and the sheets passing between them and dusting or polishing rolls, substantially as specified."

"(10) In a tin-plate-cleaning machine, the combination with a bran-holding box, of pairs of fast and slow cleaning-rolls, revolving in the body of cleaning material, substantially as specified."

"(13) In a tin-plate-cleaning machine, the combination with a box or receptacle containing a mass or body of bran or cleaning material, having slots or openings at its ends for the sheets to pass through, of cleaning rolls revolving together in pairs in the body of the cleaning material with a space between the rolls of each pair carrying on their surfaces layers of the bran or cleaning material in contact with the sheets passing between them, and a brush at the exit-slot in said box for the sheets to prevent the cleaning material issuing too rapidly at the exit slot, substantially as specified."

The claims are too numerous to be separately analyzed. Each, however, is somewhat different from the others. The elements of none are all found together in the prior art as it has been presented in this case. Few of the many patents offered by the defendant need be referred to herein with special mention of their disclosures.

Fewster Player's English patent of 1888, No. 4,784, for machines for cleaning and polishing tin and terne plates, does not show rolls revolving in bran, but does show rolls in chambers on each side of bran chambers to cause plates to pass through bran to polishing rolls and to reciprocating polishers. It shows brushes to remove bran from plates and to prevent its escape from bran box.

British patent to Player and Mainwaring, No. 16,108, of 1893, for machine for cleaning and polishing metal plates and sheets, contains no suggestion of a bran box. It provides for pairs of rollers, the two rollers of each pair revolving at different speeds and kept apart at the proper distance by springs between the bearings, and, as the surfaces

wear, the slack is taken up by screwing them together. It suggests that rollers may be joined by belts which would be running at different speeds. The provisional specification only of that patent refers to the cleansing of tin plate. The language is as follows:

"For polishing tin plates it is only necessary to pass them through the machine, but for removing the grease the rollers or belts must be fed with bran or some other cleaning material."

British patent to Jenkins, No. 3,892, of 1877, for "improvements in cleaning tin and terne plates and in the machinery apparatus or means to be employed therein," discloses vertically disposed revolving barrels of wood placed in a surrounding casing containing bran with elevator carrying bran from bottom to top for use again.

United States patent to Burton, No. 594,149, of November 30, 1897, is for a complicated machine movable on tracks from place to place as needed, which is to be noted as providing a means for feeding bran or other cleaning material to cylindrical brushes which form cleaning or polishing rolls, for the covering of which sheepskin is suggested.

In addition to what has been said as to each one of said prior patents, it should be stated that there was no satisfactory evidence offered that the machines of any of them would satisfactorily accomplish their purpose. After careful consideration of all the evidence produced, the court is satisfied that, under the circumstances above outlined, there was inventive skill exercised in the conception of the plaintiffs' machine, and that, if said machine be made according to the design of the patent in suit, said patent is valid.

Notwithstanding defendant's contention that plaintiff's machines are not made according to the patent, and that if so made they would not accomplish desired results, we are constrained to find otherwise. It would be an unnecessary refinement of reasoning to discuss every point raised by defendant in support of such contention, as, for example, that the plates are not as "hot" or as "delicate" as the patentees intended they should be when entering the machine. However, it is specially urged by the defendant that, if plaintiffs' machines were really manufactured according to the specifications of the patent, they would not accomplish their purpose for the reason that, if the rolls are separated as called for therein, they would have no effect upon the sheets through the medium of cleaning material. It is true that "separated rolls" are called for by the patent. The degree of separation is not expressed in terms of absolute distance, but in terms which are relative to the uncleaned plate and to the cleaning material. The patentees say:

"The rolls of each pair being separated or at a distance apart, so as to have no direct contact with the tin plate or sheet passing between them, and operating to grip, convey, and rub the sheet simply by or through the agency of continual but constantly changing layers of bran or cleaning material," etc.

Had "separated" not been used to qualify "rolls," the public would naturally give to the latter word its ordinary meaning. Its use, however, indicates clearly that it was not intended that the "rolls" should have any direct action by pressure or otherwise upon the sheets.

While the evidence is somewhat conflicting, the court is satisfied that the rolls in plaintiffs' machines do not have a direct action upon the sheets and are separated, with the meaning of the specifications.

The Anderson machines contain the elements of and operate upon the principle set forth in the claims of the patent in suit. Their rolls are separated as directed by the patent. This was vigorously denied. However, an experiment with a lead pencil shows that it will go between the Anderson rolls at any point. Infringement necessarily must be found after the conclusion is reached that the claims of the patent are valid. While the reasons for holding the claims valid have been heretofore indicated, they may be summed up in one general reason, to wit, the prior art does not disclose the elements of the claims combined in an organized machine operating upon the principle discovered by the patentees.

The plaintiffs are entitled to relief. Let a decree be drawn.